**[J-1-2018]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA, CARMEN FEBO SAN MIGUEL, JAMES SOLOMON, JOHN GREINER, JOHN CAPOWSKI, GRETCHEN BRANDT, THOMAS RENTSCHLER, MARY ELIZABETH LAWN, LISA ISAACS, DON LANCASTER, JORDI COMAS, ROBERT SMITH, WILLIAM MARX, RICHARD MANTELL, PRISCILLA MCNULTY, THOMAS ULRICH, ROBERT MCKINSTRY, MARK LICHTY, LORRAINE PETROSKY,

        Petitioners

        v.

THE COMMONWEALTH OF PENNSYLVANIA; THE PENNSYLVANIA GENERAL ASSEMBLY; THOMAS W. WOLF, IN HIS CAPACITY AS GOVERNOR OF PENNSYLVANIA; MICHAEL J. STACK III, IN HIS CAPACITY AS LIEUTENANT GOVERNOR OF PENNSYLVANIA AND PRESIDENT OF THE PENNSYLVANIA SENATE; MICHAEL C. TURZAI, IN HIS CAPACITY AS SPEAKER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES; JOSEPH B. SCARNATI III, IN HIS CAPACITY AS PENNSYLVANIA SENATE PRESIDENT PRO TEMPORE; ROBERT TORRES, IN HIS CAPACITY AS ACTING SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA; JONATHAN M. MARKS, IN HIS CAPACITY AS COMMISSIONER OF THE BUREAU OF COMMISSIONS, ELECTIONS, AND LEGISLATION OF

: No. 159 MM 2017
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

THE PENNSYLVANIA DEPARTMENT OF  :
STATE,                          :
                                :
            Respondents         :


**OPINION AND ORDER**


**PER CURIAM**                                    **Filed: February 19, 2018**

By Order dated January 22, 2018, this Court announced that the Pennsylvania Congressional Redistricting Act of 2011, 25 P.S. § 3596.101 *et seq.* (the "2011 Plan"), clearly, plainly and palpably violates the Pennsylvania Constitution. This adjudication was based upon the uncontradicted evidentiary record developed in the Commonwealth Court, wherein the Petitioners established that the 2011 Plan was a partisan gerrymander and that this gerrymander was extreme and durable. It was designed to dilute the votes of those who in prior elections voted for the party not in power in order to give the party in power a lasting electoral advantage. In stark contrast, Article I, Section 5 of our Constitution provides: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Pa. Const. art. I, § 5. On this record, it is clear that the 2011 Plan violates Article I, Section 5, since a diluted vote is not an equal vote.

Having determined that the 2011 Plan violates our Constitution, the question of the appropriate remedy remained. This Court was compelled to decide whether to perpetuate an unconstitutional districting plan, which would result in the unlawful dilution of our citizens' votes in the impending election, or to rectify the violation of our Commonwealth's Constitution immediately. So stated, our choice was clear. As this Court has aptly recognized, the fundamental rights guaranteed by our organic charter "cannot lawfully be infringed, even momentarily." *Pap's A.M. v. City of Erie*, 812 A.2d 591, 607 (Pa. 2002) (internal quotation marks omitted).

In our January 22 Order,[1] this Court directed that, "should the Pennsylvania General Assembly choose to submit a congressional districting plan that satisfies the requirements" of that Order, the General Assembly was to submit such a plan to the Governor on or before February 9, 2018. If the Governor accepted the General Assembly's congressional districting plan, this Court ordered such plan to be submitted to the Court on or before February 15, 2018. Thus, the General Assembly had a full eighteen days to submit a plan to the Governor, and the Governor had five days to consider and approve or disapprove the General Assembly's plan.[2]

This Court recognized that the primary responsibility for drawing congressional districts rested squarely with the legislature, but we also acknowledged that, in the eventuality of the General Assembly not submitting a plan to the Governor, or the Governor not approving the General Assembly's plan within the time specified, it would

---

[1] Justice Baer filed a concurring and dissenting statement to the Order. Chief Justice Saylor filed a dissenting statement in which Justice Mundy joined, and Justice Mundy filed a dissenting statement.

[2] In fashioning the remedy and the timeline, this Court took into consideration the requests of the parties. At oral argument on January 17, 2018, counsel for the Petitioners stated, "Our request on the remedy is that . . . the map be declared unconstitutional and that the legislature be given two weeks to come up with another map, subject obviously to the Governor's review." He further stated, "The map can be done in a day." ". . . frequently legislatures are given short time frames. . . . Yes, it's a serious task, but no, we don't believe it's unreasonable."

Counsel for the Governor stated, "[W]e are recommending that, if the map is in place by February 20 or before, we can show you that we can run this election, we can run the congressional portion of the primary and all of the up and down ballot seats by May 15." This accords with the attestations by Commissioner of the Bureau of Commissions, Elections and Legislation, Jonathan Marks, that it would be possible to hold the primary on May 15, 2018 provided a plan was in place on or before February 20, 2018.

Counsel for Speaker Turzai and Senate President Pro Tempore Scarnati stated, "I think we would like at least three weeks." His co-counsel later opined that they "need a month."

fall to this Court expeditiously to adopt a plan based upon the evidentiary record developed in the Commonwealth Court. We also offered the opportunity for parties and intervenors to submit proposed remedial districting plans to the Court on or before February 15, 2018. The Court specified that, to comply with the January 22 Order, any remedial congressional districting plan, whether enacted by the General Assembly and Governor or submitted by the parties and intervenors, should consist of:

> congressional districts composed of compact and contiguous territory; as nearly equal in population as practicable; and which do not divide any county, city, incorporated town, borough, township, or ward, except where necessary to ensure equality of population.

Order of January 22, 2018, at Paragraph "Fourth". Furthermore, the Court advised the Executive Branch Respondents to anticipate that a remedial congressional districting plan would be available by February 19, 2018, and they were directed to take all measures, including adjusting the election calendar if necessary, to ensure that the May 15, 2018 primary election would take place as scheduled under that remedial districting plan.

The Court issued a supplemental Order on January 26, 2018, in which the Court appointed Professor Nathaniel Persily as an advisor to assist the Court in adopting, if necessary, a remedial congressional redistricting plan.[3] Moreover, in that Order, we directed the Pennsylvania General Assembly and/or its Legislative Data Processing Center to submit to the Court data files containing the current boundaries of all Pennsylvania municipalities and precincts. In response, counsel for the General Assembly indicated no such current files existed.[4]

---

[3] Justice Baer filed a concurring and dissenting statement. Chief Justice Saylor and Justice Mundy dissented.

[4] Specifically, by letter dated January 31, 2018, counsel for the General Assembly indicated that such files are not updated or maintained by the General Assembly for the (continued…)

Thereafter, on February 7, 2018, this Court filed its Opinion in support of the January 22 Order, setting forth its legal rationale for determining that the 2011 Plan is violative of our Constitution.[5]  In explaining the Court's rationale, we emphasized that nothing in the Opinion was intended to conflict with, or in any way alter, the mandate contained in the January 22 Order.

Neither the General Assembly nor the Governor sought an extension of the dates set forth in our January 22 Order.  The General Assembly failed to pass legislation for the Governor's approval, thereby making it impossible for our sister branches to meet the Court's deadline.  As a result, it has become the judiciary's duty to fashion an appropriate remedial districting plan, and this Court has proceeded to prepare such a plan, a role which our Court has full constitutional authority and responsibility to assume.[6]

---

(…continued)

years between each decennial Census.  Counsel for Speaker Turzai informed the Court by letter dated January 31, 2018 that Speaker Turzai "[had] no data or documents responsive to the [Court's Order]." and that Speaker Turzai "understands that the General Assembly has submitted a letter addressing the data and documents requested…"  Finally, by letter dated January 31, 2018, counsel for Senator Scarnati responded that "[i]n light of the unconstitutionality of the Court's Orders and the Court's plain intent to usurp the General Assembly's constitutionally delegated role of drafting Pennsylvania's congressional districting plan, Senator Scarnati will not be turning over any data identified in the Court's Orders," while also footnoting that Senator Scarnati "does not possess any documents responsive to paragraph "Fourth" of the Court's January 26 Order."

[5] In response thereto, Justice Baer filed a concurring and dissenting opinion.  Chief Justice Saylor filed a dissenting opinion, joined by Justice Mundy.  Finally, Justice Mundy filed a dissenting opinion.

[6] When the legislature is unable or chooses not to act, it becomes the judiciary's role to ensure a valid districting scheme.  As explained in our Opinion, our Court possesses broad authority to craft meaningful remedies when required.  Pa. Const. art. V, §§ 1, 2, 10; 42 Pa.C.S. § 726 (granting power to "enter a final order or otherwise cause right and justice to be done").  Thus, the prospect of a judicially-imposed remedial plan was well within our judicial authority, and is supported by our Constitution and laws.

Pursuant to the January 22 Order, certain parties, the intervenors, and several *amici* submitted to the Court proposed remedial districting plans for the Court's consideration, all of which were carefully reviewed by the Court.[7]  Proceeding expeditiously, the Court prepared a constitutionally sound plan in accordance with our announced criteria.

After full deliberation and consideration, the Court hereby adopts this remedial plan ("Remedial Plan")[8], as specifically described below, which shall be implemented forthwith in preparation for the May 15, 2018 primary election.[9]  The Remedial Plan is based upon the record developed in the Commonwealth Court, and it draws heavily upon the submissions provided by the parties, intervenors, and *amici*.  It is composed of congressional districts which follow the traditional redistricting criteria of compactness, contiguity, equality of population, and respect for the integrity of political subdivisions. The Remedial Plan splits only 13 counties.[10]  Of those, four counties are split into three

[7] The applications for leave to file amicus briefs, filed by Concerned Citizens for Democracy, Fair Democracy, Adele Schneider and Stephen Wolf, and the American Civil Rights Union, are hereby granted.  Moreover, we accepted for filing a "Brief in Opposition to Proposed Remedial Congressional Districting Maps Submitted by Petitioners, Governor Wolf, Lieutenant Governor Stack, Democratic Caucus of the Pennsylvania Senate and Democratic Caucus of the Pennsylvania House of Representatives" filed by Speaker Turzai and Senator Scarnati.  Finally, Petitioners' application for leave to file a reply to that brief is hereby granted.

[8] For this process, the Court utilized the 2011 U.S. Census population data, as adjusted by Pennsylvania, available at http://www.redistricting.state.pa.us/Data.cfm.

[9] Although we provide herein a brief description of the statistical measures used to analyze the Remedial Plan, a full, computer-generated report detailing additional statistical information is available on the Court's website at http://www.pacourts.us/news-and-statistics/cases-of-public-interest/league-of-women-voters-et-al-v-the-commonwealth-of-pennsylvania-et-al-159-mm-2017.

[10] An additional county split may appear in some GIS program calculations, but that is due to the fact that a non-contiguous Chester County census block with zero population is located inside Delaware County.  That census block and its adjoining water is appropriately placed inside the district that contains Delaware County.

districts and nine are split into two districts.  The parties, intervenors, and *amici* differ in how they calculate municipal and precinct splits, and, as noted earlier, the Legislative Respondents suggest that updated data on precinct and municipal boundaries does not exist.  The Remedial Plan is superior or comparable to all plans submitted by the parties, the intervenors, and *amici*, by whichever Census-provided definition one employs (Minor Civil Divisions, Cities, Boroughs, Townships, and Census Places)[11].  The compactness of the plan is superior or comparable to the other submissions, according to the Reock, Schwartzberg, Polsby-Popper, Population Polygon, and Minimum Convex Polygon measures described in the Court's January 26 Order.  Here, too, the parties, intervenors, and *amici* disagree on the precise ways to calculate these measures, and some failed to deliver compactness scores with their submissions.  By whichever calculation methodology employed, the Remedial Plan is superior or comparable.  Finally, no district has more than a one-person difference in population from any other district, and, therefore, the Remedial Plan achieves the constitutional guarantee of one person, one vote.

Accordingly, this 19th day of February, 2018, the Court orders as follows:

First, the Pennsylvania primary and general elections for seats in the United States House of Representatives commencing in the year 2018 shall be conducted in accordance with the Remedial Plan as described by the 2010 Census block equivalency (denominated the "Remedial Plan Census Block Equivalency Files") and ESRI shape files (denominated the "Remedial Plan Shape Files") uploaded to this Court's website at http://www.pacourts.us/news-and-statistics/cases-of-public-interest/league-of-women-

---

[11] The Remedial Plan follows, to the extent possible, the boundaries of wards in Philadelphia.

voters-et-al-v-the-commonwealth-of-pennsylvania-et-al-159-mm-2017, under the heading "Order Adopting Remedial Plan". The Remedial Plan, in its constituent parts, is hereby made part of this Order, and is hereby adopted as the division of this Commonwealth into eighteen congressional districts, unless and until the same shall be lawfully changed. For reference, images of the Remedial Plan are attached at Appendix A, and available in high resolution at the above website; and images of the 2011 Plan are attached at Appendix B, and available in high resolution at the above website. Also uploaded to the above website are computer generated reports describing the Remedial Plan, identifying (1) county/minor civil division/voting district splits, (2) census place and municipal splits, and (3) compactness scores.

Second, Executive Respondents and Respondent General Assembly, including its Legislative Data Processing Center ("LDPC"),[12] shall forthwith prepare textual language that describes the Remedial Plan[13] and submit the same to the Secretary of the Commonwealth without delay. The Secretary of the Commonwealth shall thereafter file with this Court's Prothonotary a certification of compliance of the preparation of the textual description of the Remedial Plan, along with a copy of the textual description.

Third, Respondent Secretary of the Commonwealth shall, without delay, following the preparation of the textual description of the Remedial Plan, publish notice of the Congressional Districts in the Pennsylvania Bulletin.

---

[12] The LDPC was established under the Act of Dec. 10, 1968, P.L. 1158, No. 365, and routinely provides technical services relating to congressional and legislative redistricting.

[13] The textual descriptions should be expressed in a form consistent with the text found in Section 301 of the Congressional Redistricting Act of 2011, 25 P.S. § 3596.301; Section 301 of the Congressional Redistricting Act of 2002, 25 P.S. § 3595.301 (superseded); and Appendix A to the Order entered by this Court in *Mellow v. Mitchell*, 607 A.2d 204, 237-43 (Pa. 1992).

Fourth, to provide for an orderly election process, the schedule for the primary election to be held May 15, 2018 for the election of Representatives to the United States Congress shall be implemented by the Secretary of the Commonwealth and all election officers within the Commonwealth in accordance with the Revised Election Calendar as proposed by the Secretary of the Commonwealth and Commissioner of the Bureau of Commissions, Elections and Legislation,[14] which Calendar is hereby approved, and is attached to this Order as Appendix C.

Fifth, should there be any congressional vacancies existing now or occurring after the entry of this Order, but prior to the commencement of the terms of the members to be elected in the General Election of 2018, they shall be filled for the remainder of the unexpired terms from the districts formerly prescribed in the Congressional Redistricting Act of 2011, 25 P.S. § 3596.301.

Sixth, the Secretary of the Commonwealth is directed to notify this Court by 4:00 p.m. on Tuesday, February 20, 2018, should it foresee any technical issues concerning the implementation of the Remedial Plan.

So Ordered.

Jurisdiction retained.


Chief Justice Saylor and Justices Baer and Mundy file dissenting opinions.

---

[14] The Application of Respondents Acting Secretary Robert Torres and Commissioner Jonathan Marks for Approval of Election Calendar Adjustments is hereby granted.

# APPENDIX A

## The Remedial Plan



# APPENDIX A

## The Remedial Plan

## District 1



# APPENDIX A

## The Remedial Plan

## District 2



# APPENDIX A

## The Remedial Plan

## District 3



# APPENDIX A

## The Remedial Plan

## District 4



# APPENDIX A

## The Remedial Plan

## District 5



# APPENDIX A

## The Remedial Plan

## District 6



# APPENDIX A

## The Remedial Plan

## District 7



## The Remedial Plan

## District 8



# APPENDIX A

## The Remedial Plan

## District 9



# APPENDIX A

## The Remedial Plan

## District 10



# APPENDIX A

## The Remedial Plan

## District 11



# APPENDIX A

## The Remedial Plan

## District 12



# APPENDIX A

## The Remedial Plan

## District 13



# APPENDIX A

## The Remedial Plan

## District 14



# APPENDIX A

## The Remedial Plan

## District 15





# APPENDIX A

## The Remedial Plan

## District 17



# APPENDIX A
## The Remedial Plan
## District 18



# APPENDIX B

## The Congressional Redistricting Act of 2011



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 1



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 2



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 3



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 4



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 5



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 6



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 7



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 8



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 9



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 10



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 11



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 12



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 13



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 14



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 15



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 16



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 17



# APPENDIX B

## The Congressional Redistricting Act of 2011

## District 18



# APPENDIX C

## REVISED ELECTION CALENDAR FOR
## OFFICE OF REPRESENTATIVE IN CONGRESS
## 2018 GENERAL PRIMARY ELECTION

First day to circulate and file nomination petitions...........................................February 27

First day to circulate and file nomination papers...................................................March 7

Last day to circulate and file nomination petitions...............................................March 20

Day for casting of lots in the office of the Secretary of the
Commonwealth for position of names on the primary ballot ...............................March 22

Date by which the Secretary of the Commonwealth must
transmit to the County Boards of Elections a list of candidates
who filed nomination petitions with him and who are not known
to have withdrawn or been disqualified ............................................................... March 26

Date by which County Boards of Elections must begin to transmit absentee
ballots and balloting materials to military-overseas voters in extremely
remote or isolated areas who by this date submitted a valid application............ March 26

Last day for withdrawal by candidates who filed nomination petitions ................March 27

Last day to file objections to nomination petitions...............................................March 27

Date by which County Boards of Elections must transmit absentee
ballots and balloting materials to all military-overseas voters who
by this date submitted a valid application............................................................. March 30

Last day that may be fixed by the Commonwealth Court for
hearings on objections that have been filed to nomination petitions................. March 30

Last day for the Commonwealth Court to render decisions in
cases involving objections to nomination petitions................................................ April 4

Last day to apply for a civilian absentee ballot.......................................................May 8

Last day for County Boards of Elections to receive voted
civilian absentee ballots ...........................................................................................May 11

**GENERAL PRIMARY** ............................................................................. **May 15**

Last day for County Boards of Elections to receive voted
military-overseas absentee ballots .........................................................................May 22